*E-FILED - 1/14/14*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE BRANNER, aka JAMES WILLIS JOHNSON,<br><br>    Petitioner,<br><br>v.<br><br>KEVIN CHAPPELL, Acting Warden of California State Prison at San Quentin<br><br>    Respondent. | No. C 90-3219 DLJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO RECONSIDER FINDINGS ON PROCEDURAL DEFAULT**<br><br>**DEATH PENALTY CASE** |

## I. Introduction

Petitioner's habeas petition challenging his state conviction and sentence is pending before the court. Respondent has filed a motion requesting reconsideration of this court's Order of March 5, 2007, (Docket No. 253), finding certain claims not procedurally defaulted. Respondent's motion is based on the Supreme Court's recent decision in *Walker v. Martin*, 131 S. Ct. 1120 (2011). Petitioner opposes respondent's request. For the reasons stated below, the court grants in part and denies in part respondent's motion.

## II. Background

In 1982, petitioner was convicted in Santa Clara County Superior Court of murdering Edward Dukor in Dukor's jewelry store in a shopping center in Milpitas, California. The jury found the special circumstance that he committed the murder in the course of robbery to be true and fixed the penalty at death. *People v. Johnson*, 47 Cal. 3d 1194, 1212 (1989). On April 5, 1982, the Supreme Court of California appointed James Kyle Gee to represent petitioner on direct appeal. Petitioner's conviction and sentence were affirmed on February 23, 1989. The United States Supreme Court denied petitioner's petition for writ of certiorari on March 19, 1990.

In December 1989, before petitioner's conviction became final, Mr. Gee filed an application with the Supreme Court of California to withdraw as counsel for petitioner. At the time, it was practice in California for counsel representing an inmate on direct appeal to automatically become counsel for purposes of state habeas proceedings. The Supreme Court of California did not immediately act on Mr. Gee's withdrawal request and petitioner remained unrepresented.

Acting in pro per, petitioner filed in this court on November 9, 1990, a request for a stay of execution and appointment of counsel. The court stayed the execution and referred the matter for appointment of counsel. On January 31, 1991, the court appointed the California Appellate Project ("CAP") to represent petitioner. On October 6, 1992, CAP filed a motion to withdraw from petitioner's case. The court granted this motion on January 12, 1993, and appointed attorneys Alexander Brainerd, Kenneth Keller and David Eiseman from the law firm of Bronson, Bronson & McKinnnon to represent petitioner.

On March 24, 1994, Mr. Brainerd of Bronson, Bronson & McKinnon moved the Supreme Court of California to allow Mr. Gee to withdraw so that he could be appointed to represent petitioner in state habeas proceedings. Mr. Brainerd's motion was granted. In April 1994, the Bronson firm filed a request seeking authorization to incur expenses to investigate potential habeas claims. This request was denied. A renewed request was filed in August 1994 and was granted in

2

August 1995, permitting counsel to incur $15,000 in expenses. During 1995 and 1996, the Bronson firm investigated petitioner's habeas claims.

On March 14, 1997, Mr. Brainerd and Mr. Eiseman resigned from the Bronson firm and joined the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP. Mr. Eiseman remained as appointed counsel, while Mr. Brainerd and Mr. Keller withdrew from representation and were replaced by Carlyn Clause of the Bronson firm. Ms. Clause subsequently withdrew from the case.

Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitioner filed, on April 23, 1997, a federal habeas petition containing only exhausted claims, a notice regarding the existence of non-exhausted claims and a motion to hold proceedings in abeyance pending the exhaustion of non-exhausted claims. The court granted petitioner's abeyance motion, and in June 1999, directed him to file an exhaustion petition in state court within 60 days.

After receiving four extensions of time from this court, petitioner filed an exhaustion petition in state court on November 6, 2000. The California Supreme Court denied this petition in a two-page order. *In re Willie Branner*, Cal. Supr. Ct. No. SO92757 (Oct. 29, 2003). The state court denied all of petitioner's claims on the merits. It also denied numerous claims, in whole or in part, based on various state procedural bars.

Petitioner filed an amended federal habeas petition containing his newly-exhausted claims in this court on December 19, 2003. Following the litigation of procedural issues, respondent filed the instant Motion to Reconsider Findings on Procedural Default.

### III. Discussion

**A. Procedural Default**

Under the doctrine of procedural default, federal courts will not review "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*,

3

501 U.S. 722, 729 (1991). The doctrine of procedural default is a specific application of the general doctrine as to adequate and independent state grounds. *Fields v. Calderon*, 125 F. 3d 757, 762 (9th Cir. 1997). It bars a federal court from granting relief on a claim when a state court declined to address the claim because the petitioner failed to meet a state procedural requirement. *Id*.

In the habeas context, the procedural default doctrine furthers the interests of comity and federalism. *Coleman*, 501 U.S. at 730. It helps ensure that the state criminal trial remains the "main event" rather than a "tryout on the road" for a later federal habeas proceeding. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

Procedural default analysis proceeds in two steps. First, the court must determine whether the procedural rule the state court invoked to bar the claim is both "independent" and "adequate" to preclude federal review. "For a state procedural rule to be "independent," the state law basis for the decision must not be interwoven with federal law." *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001), *citing Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). A state law ground is interwoven with federal law in those cases where application of the state procedural rule requires the state court to resolve a question of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), *citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). If the state court does not make clear that it is resting its decision on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds. *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996). In 1998, the Supreme Court of California made clear that it would no longer consider federal law when denying a habeas claim as procedurally barred on grounds of untimeliness, except when applying an exception where petitioner was convicted or sentenced pursuant to an invalid statute. *In re Robbins*, 18 Cal. 4th 770, 811-12 (1998).

For a state procedural rule to be "adequate," it must be clear, well-established and consistently applied. *Bean*, 96 F.3d at 1129. The issue of whether a state procedural rule is adequate to foreclose federal review is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415,

4

422 (1965). The adequacy of a state procedural rule must be assessed as of the time when the petitioner committed the default. *Fields*, 125 F.3d at 760.

If the procedural rule invoked by the state court is both adequate and independent, then to overcome the procedural bar, the petitioner must establish either "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The "cause" standard requires petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such objective impediments include a showing that the factual or legal basis for a claim was not available to counsel, or that "some interference by officials" made compliance with a procedural rule impracticable. *Id.* Additionally, ineffective assistance of counsel may serve as "cause" for procedural default. *Id.* "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

"Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). This class of cases implicates a fundamental miscarriage of justice. *Id.*

**a. Untimeliness**

Respondent contends that the California Supreme Court's denial of claims 1-43, 45-48, 49 (to the extent that it involves the trial court's alleged error in instructing the jury with CALJIC No. 8.84.2 and alleged prosecutorial misconduct during voir dire and closing), 50, 53-62 and 64-69 on grounds of untimeliness under *In re Clark*, 5 Cal. 4th 750 (1993), and *Robbins*, 18 Cal. 4th at 780-81, constitutes an independent and adequate procedural bar prohibiting federal review of these

5

claims. Petitioner disagrees.

"California does not employ fixed statutory deadline to determine the timeliness of a state prisoner's petition for habeas corpus. Instead, California directs petitioners to file known claims as promptly as the circumstances allow." *Martin*, 131 S. Ct. 1124 (internal quotations omitted.) In order to avoid the bar of untimeliness, a petitioner must establish "i) absence of substantial delay, ii) good cause for the delay, or iii) that the claim falls within an exception to the bar of untimeliness." *Robbins*, 18 Cal. 4th at 780. Under the California Supreme Court Policies Regarding Cases Arising From Judgments Of Death ("Policies"), a habeas corpus petition is presumed to be filed without substantial delay if it is filed within 180 days from the due date of the reply brief on direct appeal, or within 36 months after the appointment of habeas counsel, whichever is later.[1]

Several leading decisions influence the analysis of untimeliness defaults. In 1993, the Supreme Court of California decided *Clark*, 5 Cal. 4th 750, clarifying the law regarding untimeliness. Prior to at least 1993, the untimeliness bar was not firmly established or consistently applied. *Fields*, 125 F. 3d 763-64. In 1998, the Supreme Court of California decided *Robbins*, declaring that it would no longer consider federal law when denying a habeas claim as procedurally barred for untimeliness. 18 Cal. 4th at 811-12. In *Martin*, the United States Supreme Court created an intervening change in controlling law by holding that California's timeliness rule is adequate to bar federal habeas review. 131 S. Ct. at 1131.

Respondent contends that in light of the recent *Martin* decision, the Supreme Court of California's denial of petitioner's claims on grounds of untimeliness constitutes an independent and adequate procedural bar prohibiting federal review of these claims. In its Order of March 5, 2007, this court found these claims not defaulted based on untimeliness on the grounds that respondent had failed to meet his burden of establishing that the untimeliness rule was consistently applied. (Docket

---

[1] When the Policies were first propounded in 1989, petitioners were afforded a presumption of timeliness for 60 days following the due date for the reply brief on direct appeal. This presumption period was then extended to 90 days, and then to 180 days on July 17, 2002.

6

No. 253 at 9.) In *Martin* however, the Supreme Court found that "a discretionary rule ought not to be disregarded upon a showing of seeming inconsistencies. Discretion enables a court to home in on case-specific considerations and to avoid harsh results that sometimes attend consistent application of an unyielding rule." 131 S. Ct. at 1130. In light of this holding, the court finds petitioner's claims defaulted on grounds of untimeliness.

Petitioner contends that *Martin* does not bar review of his claims because the untimeliness rule was inadequate at the time that his untimeliness default occurred. He contends that his default occurred before the *Clark* decision, prior to which the untimeliness rule was inadequate, and certainly before the *Robbins* decision, prior to which the untimeliness rule was not independent of federal law.

The application of the untimeliness bar appears tethered to the date on which the relevant habeas petition is filed. *See Calderon v. United States Dist. Court for the Eastern Dist. of California (Hayes)*, 103 F.3d 72, 75 (9th Cir. 1996) (adequacy of timeliness standards measured as of date first state habeas petition was filed); *Bean*, 96 F.3d at 1131 (finding pre-*Clark* default where first state habeas petition was filed in May 1994, not long after *Clark* was decided); *Bennett v. Mueller*, 322 F.3d 573, 579 (9th Circuit 2003) (citing cases sharing the common theme that "when the habeas proceeding has been initiated before the *Clark/Robbins* decisions were announced, the untimeliness rule cannot stand as an independent and adequate state ground barring federal review.") Petitioner initiated his state habeas proceedings in 2000, long after *Clark* and *Robbins* were decided. By that time, California's untimeliness rule was both independent and adequate to bar federal review.

The date of filing of a habeas petition also serves as a marker for measuring delay in filing a petition. In *Martin*, for example, petitioner's relevant state habeas petition was filed five years after his conviction became final, a delay deemed substantial under California case-law. 131 S. Ct. at 1128 (citing cases where delays of four years, sixteen months, and two years and six months barred claims.) Here, petitioner's state habeas petition was filed in 2000, eleven years after his state

7

conviction became final, and seven years after the Supreme Court of California appointed counsel to represent him in state habeas proceedings. In light of this delay, the Supreme Court of California found his claims time-barred.

Petitioner analogizes his case to *Morales v. Calderon*, 85 F.3d 1387 (9th Cir. 1996), in which the Ninth Circuit found a pre-*Clark* default. Morales' conviction and death sentence were affirmed by the Supreme Court of California in April 1989, several months after petitioner's conviction and sentence became final. As in petitioner's case, state appellate counsel failed to file a state habeas petition on Morales' behalf. Ultimately, a state habeas petition was filed on behalf of Morales in 1992, but was deemed untimely under the California Supreme Court Policies. 85 F.3d at 1389. Petitioner argues that since Morales' 1992 petition was deemed untimely, his claims must have also been defaulted by 1992. Unlike petitioner however, Morales filed his state habeas petition before *Clark* was decided. Unlike petitioner, Morales' default clearly occurred pre-*Clark*.

Petitioner argues that California's untimeliness rule is not sufficiently independent of federal law because the state court's assessment of his statement of cause justifying his delay in filing a state habeas petition must have necessarily required an examination of federal law. That is not the case. In *Robbins,* the Supreme Court of California explained:

> A claim or subclaim that is substantially delayed will nevertheless be considered on the merits if the petitioner can demonstrate "good cause" for the delay . . . . We suggested one example of good cause for delay in *Clark*, *supra*, 5 Cal.4th 750. We explained that *known claims* "must be *presented promptly unless* facts known to counsel suggest the existence of other potentially meritorious claims which *cannot be stated without an additional investigation*." (*Id*. at p. 784, italics added.) In other words, if, for example, a petitioner has investigated and "perfected" - i.e., completed written factual and legal argumentation regarding - three claims (A, B, and C) but he or she is continuing to conduct a bona fide "ongoing investigation" into another potential claim (D), the petitioner's "delayed" presentation of the former claims in a joint petition containing all four claims may be justified by "good cause" - the avoidance of piecemeal presentation of claims. (*Id*. at pp. 767-770, 777); *see also Gallego*, *supra*, 18 Cal.4th at p. 838 & fn. 13.) [FN 28]
>
> FN28 We also stated in *Clark*, *supra*, 5 Cal.4th 750: "If the petition is delayed because the petitioner is not able to state a prima facie case for relief on all of the bases believed to exist, the delay in seeking habeas corpus relief may be justified

8

> when the petition is ultimately filed if the petitioner can demonstrate that (1) he had good reason to believe other meritorious claims existed, and (2) the existence of facts supporting those claims could not with due diligence have been confirmed at an earlier time." (*Id*. at p. 781.) In a footnote to that statement, we made clear that this basis for "good cause" exists only if the petitioner in fact "delays filing of the petition *in order to investigate* potential claims . . . ." (*Id*. at p. 781, fn. 17, italics added.) Thus, *Clark* indicates that good cause for delayed presentation of claims can be established if, during the delay, the petitioner *was conducting an ongoing, bona fide investigation* of another claim or claims . . .

18 Cal. 4th at 805-06. As illustrated above, the state court had to determine whether the facts outlining the nature of petitioner's investigation demonstrated sufficient diligence on his part to prepare a petition, or alternately, supported a finding of an inability to prepare a petition in a timely manner due to a bona fide ongoing investigation. Such a determination did not necessarily implicate the merits of underlying claims. Petitioner has not established that the state court's "good cause" determination implicated federal law. Moreover, the Ninth Circuit has recognized the independence of California's untimeliness rule. *Bennett*, 322 F. 3d at 582-83.

Next, citing *Henry v. Mississippi*, 379 U.S. 443 (1965), respondent argues that California's untimeliness rule does not further a legitimate state interest. In *Henry*, the Supreme Court held that "a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest." *Id*. at 478. Petitioner asserts that because in capital cases the state court routinely denies claims on the merits in an alternative holding, it does not benefit from the expediency and lessened burden of not conducting a review on the merits, and thus lacks a legitimate interest in denying claims on procedural grounds.

Petitioner is mistaken. The United States Supreme Court has clearly stated:

> [A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural

9

> bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989). The state's interest in finality and comity, *see Calderon v. Thompson*, 523 U.S. 538, 555-56 (1998), is not jeopardized by alternative merit-based denials of claims.

Petitioner further argues that California's untimeliness rule discriminates against "claims of federal rights" by preventing petitioners from obtaining federal review of their claims, thus nullifying federal rights and causes of action. That is not the case. The untimeliness rule applies to state as well as federal claims. Moreover, the rule is triggered only when an individual fails to avail himself of his right to seek habeas relief in a timely manner. In the absence of substantial delay, a petitioner may obtain full review of his claims in state and federal court.

For the above-mentioned reasons, claims 1-43, 45-48, 49 (to the extent that it involves the trial court's alleged error in instructing the jury with CALJIC No. 8.84.2 and alleged prosecutorial misconduct during voir dire and closing), 50, 53-62 and 64-69 are defaulted based on untimeliness.

### b. *Dixon*

Respondent alleges that the Supreme Court of California's denial of numerous claims pursuant to *Ex parte Dixon*, 41 Cal. 2d 756 (1953), constitutes an independent and adequate procedural bar prohibiting federal review. Under California's *Dixon* rule, an unjustified failure to present an issue on appeal will generally preclude its consideration in a habeas petition. *Id*. at 759. Respondent did not allege any *Dixon* defaults in his original motion, conceding instead that under *Fields*, 125 F.3d at 764-65, any application of the *Dixon* rule to defaults like petitioner's, which occurred before the Supreme Court of California rendered its decision in *Clark* and *Harris* in 1993, was inadequate to bar federal review. Docket No. 214 at 9 fn. 9. Respondent now argues that although *Martin* did not address the *Dixon* rule, *Martin*'s rationale applies to it with equal force and mandates a finding of default.

Even if *Martin*'s rationale were extended to render *Dixon* denials adequate to bar federal review, it would not apply to defaults that occurred prior to 1993, at which time, as acknowledged by the Supreme Court of California, the *Dixon* rule was not sufficiently clear, and guidance needed to be provided to the bench and bar.  *See Fields*, 125 F.3d at 763 ("[t]he California Supreme Court explicitly acknowledged [in *Harris*] that its application of the *Waltreus* and *Dixon* rules had become obscured over the years by the development of a number of exceptions . . . .)  Such guidance with respect to the application of the *Dixon* bar was provided by *Harris* and *Clark*. *Id*. at 763-64.  Since petitioner's direct appeal was completed long before 1993, his *Dixon* defaults occurred at a time when the *Dixon* rule was not adequate.  *See id*. at 760-61 (trigger date for assessing application of *Dixon* rule is the time when petitioner had the opportunity to raise the claims on direct appeal.)  Accordingly, none of petitioner's claims are defaulted pursuant to *Dixon*.

### c. Contemporaneous Objection

Respondent argues that certain claims, including claims 21, 29, 31 and 33-35, are defaulted, in whole or in part, due to petitioner's failure to object at trial.  He asserts that California's contemporaneous objection rule constitutes an independent and adequate state law ground that bars federal review of petitioner's claims.  Respondent's allegations merely reiterate arguments raised in his original motion.  He does not explain how *Martin* occasions a reconsideration of this court's prior decision.  Respondent's allegations are denied on the same grounds asserted in this court's Order of March 5, 2007.  (Docket No. 253 at 9-12.)

## B.  Cause, Prejudice and Miscarriage of Justice

Respondent contends that because petitioner fails to demonstrate cause, prejudice or the miscarriage of justice to overcome his defaults, his claims must be denied.  Petitioner counters that his defaults, if they occurred, should be excused because he is able to establish exceptions to them.

Since the determination of whether petitioner has established exceptions to default involves an examination of the merits of petitioner's claims, the court defers ruling on the matter until after it

11

has considered the latter. *See Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982) (if deciding merits of claims proves to be more efficient than adjudicating issues of procedural default and its exceptions, court may exercise discretion to take this course of action.)  The court will consider issues of cause, prejudice and the miscarriage of justice with respect to any claims that appear to have merit at a later date.

### IV.  Conclusion

For the above-mentioned reasons, the Court concludes as follows:

1)  Claims 1-43, 45-48, 49 (to the extent that it involves the trial court's alleged error in instructing the jury with CALJIC No. 8.84.2 and alleged prosecutorial misconduct during voir dire and closing), 50, 53-62 and 64-69 are defaulted based on untimeliness;

2) No claims are defaulted based on *Dixon*;

3)  No claims are defaulted based on California's contemporaneous objection rule.

4)  Petitioner and respondent are each directed to submit a statement outlining a proposed litigation schedule for the consideration of the merits of petitioner's claims by February 24, 2014.  The court will schedule a case management conference if necessary.

**IT IS SO ORDERED.**

DATED: 1/14/14

D. Lowell Jensen
United States District Judge

Copy of Order E-Filed to Counsel of Record on 1/14/14:

Copy of Order Mailed on 1/14/14 to:

**California Appellate Project**
California Appellate Project
Federal Court Docketing
101 Second Street
Suite 600
San Francisco, CA 94105