*E-FILED - 1/15/14*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE BRANNER, aka JAMES WILLIS JOHNSON,<br><br>    Petitioner,<br><br>v.<br><br>KEVIN CHAPPELL, Acting Warden of California State Prison at San Quentin<br><br>    Respondent. | No. C 90-3219 DLJ<br><br>**ORDER DENYING RESPONDENT'S UPDATED MOTION TO DISMISS CLAIMS BASED ON STATUTE OF LIMITATIONS**<br><br>**DEATH PENALTY CASE** |

## I. Introduction

Petitioner's habeas petition challenging his state conviction and sentence is pending before the court. Respondent has filed a motion seeking dismissal of numerous claims based on the statute of limitations established by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Petitioner contends that he is entitled to tolling of the limitations period. Pursuant to Civil Local Rules 7-1(b) and 7-6, the court finds that petitioner's motion is appropriate for submission on the papers without oral argument. For the reasons stated below, the court denies respondent's motion.

## II. Background

In 1982, petitioner was convicted in Santa Clara County Superior Court of murdering Edward Dukor in Dukor's jewelry store in a shopping center in Milpitas, California. The jury found the special circumstance that he committed the murder in the course of robbery to be true and fixed the penalty at death. People v. Johnson, 47 Cal. 3d 1194, 1212 (1989). The California Supreme Court affirmed the conviction and sentence on February 23, 1989. The United States Supreme Court denied petitioner's petition for writ of certiorari on March 19, 1990.

Acting in pro per, petitioner filed in this court on November 9, 1990, a request for a stay of execution and appointment of counsel. The court stayed the execution and referred the matter for appointment of counsel. On January 31, 1991, the court appointed the California Appellate Project ("CAP") to represent petitioner. On October 6, 1992, CAP filed a motion to withdraw from petitioner's case. The court granted this motion on January 12, 1993, and appointed attorneys Alexander Brainerd, Kenneth Keller and David Eiseman from the law firm of Bronson, Bronson & McKinnnon to represent petitioner. On March 14, 1997, Alexander Brainerd and David Eiseman resigned from the Bronson firm and joined the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP. David Eiseman remained as appointed counsel, while Alexander Brainerd and Kenneth Keller withdrew from representation and were replaced by Carlyn Clause of the Bronson firm. Carlyn Clause subsequently withdrew from the case.

Pursuant to the court's instructions, on April 23, 1997, petitioner filed a federal habeas petition containing only exhausted claims, a notice regarding the existence of non-exhausted claims and a motion to hold proceedings in abeyance pending the exhaustion of non-exhausted claims. On October 6, 1997, the court granted petitioner's abeyance motion and directed him to exhaust all unexhausted claims once they were identified by the court. On November 6, 2002, petitioner filed an exhaustion petition in state court. The California Supreme Court denied this petition on the merits and on procedural grounds, in a two-page order on October 29, 2003. In re Willie Branner,

Cal. Supr. Ct. No. SO92757 (Oct. 29, 2003).

Pursuant to the court's instructions, petitioner filed an amended federal habeas petition containing his newly-exhausted claims in this court on December 19, 2003. After litigating issues of procedural default and other procedural bars, respondent subsequently filed the instant motion to dismiss. Briefing on the matter was completed on December 28, 2010.

Respondent argues that although petitioner's original federal habeas petition, filed on April 23, 1997, was timely, claims contained in his amended petition, filed on December 19, 2003, are time-barred. He contends that these claims do not relate back to any claim asserted in the original petition. Respondent further requests that the court vacate, nunc pro tunc, its 1997 order granting petitioner a stay on the grounds that petitioner has engaged in dilatory practices that render the stay inappropriate. Petitioner counters that he is entitled to equitable and statutory tolling of the limitations period. He also contends that claims in his amended petition relate back to claims in his original petition, but reserves briefing on the matter, should it be necessary, for a later date.

## III. Discussion

The AEDPA imposes a one-year limitations period for the filing of a federal habeas petition. 28 U.S.C. § 2244(d)(1). The statute provides, in pertinent part, that the limitations period runs from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). The time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward the limitation period. 28 U.S.C. § 2244(d)(1)(2).

3

The Supreme Court of the United States recently held that the timeliness provision in the federal habeas corpus statute is subject to equitable tolling. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). A federal habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id., at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). The extraordinary circumstances must be the cause of the untimeliness. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

Here, petitioner's direct appeal was denied on February 23, 1989. The United States Supreme Court denied petitioner's petition for writ of certiorari on March 19, 1990, rendering his conviction final. Because petitioner's conviction was final on direct appeal prior to the enactment of the AEDPA, his limitations period began to run on April 23, 1996, and expired on April 24, 1997. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001). Absent tolling or a finding of relation-back, petitioner's amended petition, filed on December 19, 2003, is therefore untimely.

Petitioner's request for tolling is largely occasioned by the interplay between three legal principles: the "total exhaustion requirement" of Rose v. Lundy, 455 U.S. 509, 522 (1982), the AEDPA's statute of limitations and the "relation back" standard articulated in Mayle v. Felix, 545 U.S. 644, 656 (2005). Under Rose, petitioners were required to fully exhaust their claims in state court before seeking federal habeas relief. "Rose required district courts to dismiss a "mixed" petition, 'leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." King v. Ryan, 564 F.3d 1133, 1138 (9th Cir. 2009), quoting Rose, 455 U.S. at 510.

The AEDPA's one-year statute of limitations changed the practical impact of Rose's total exhaustion requirement. It meant that "petitioners whose mixed petitions were dismissed under

4

Rose ran the risk of being time-barred from bringing their claims, once exhausted, in federal court." King, 564 F.3d at 1138. In view of this problem, the Ninth Circuit developed a three-step procedure for mixed petitions, allowing:

> (1) a petitioner to amend his petition to delete any unexhausted claims; (2) the court in its discretion to stay and hold in abeyance the amended, fully exhausted petition; (3) once the claims have been exhausted in state court, the petitioner to return to federal court and amend his federal petition to include the newly exhausted claims.

Id. at 1139, citing Calderon v. United States District Court (Taylor), 134 F.3d 981, 986 (9th Cir. 1998). This procedure curtailed the risk that petitioners might forfeit federal review of their unexhausted claims.

In 2005, the United States Supreme Court's decision in Mayle rendered the amendment of federal petitions to include newly exhausted claims problematic. Prior to Mayle, under Ninth Circuit law, an amendment to a habeas petition related back to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence." 545 U.S. at 656. Finding this interpretation of the relation-back standard too broad, the Supreme Court held that an amended claim in a habeas petition relates back for statute of limitation purposes only if it shares a common core of operative facts with the original claim. Id. at 664. This new standard rendered the demonstration of timeliness of claims amended into federal habeas petitions more difficult.

Petitioner faces the conundrum created by Rose, the AEDPA and Mayle. Having followed the court's instructions to file a petition containing only exhausted claims prior to the expiration of the statute of limitations, and to request a stay pending the completion of state exhaustion proceedings, petitioner's exhausted claims are now barred by the statute of limitations unless they relate back to claims in his original petition under Mayle, or the statute of limitations is tolled.

As discussed below, equitable principles dictate that the period from April 23, 1997, the date petitioner filed his original petition, until December 19, 2003, the date of filing of the amended petition, be tolled. Petitioner has diligently pursued his rights and extraordinary circumstances

5

prevented timely filing. Holland, 130 S. Ct. at 2562.

## A. Diligent Pursuit of Rights

Petitioner has diligently pursued habeas relief. After his conviction and sentence became final on direct appeal on March 19, 1990, he initiated his federal habeas proceedings by requesting appointment of counsel on November 9, 1990. The court granted the request and the California Appellate Project ("CAP") was appointed to represent him on January 31, 1991. CAP began reviewing the 12,000-page record and briefing related to petitioner's trial. From 1991-1992, CAP investigated potential state and federal habeas claims. Its efforts were hampered by the fact that no extra-record investigation had been conducted while petitioner's case was in state court. Dkt. No. 238.

In October 1992, CAP moved to withdraw as petitioner's counsel. Then-Chief Judge Henderson requested that current counsel's former firm, which specialized in intellectual property and commercial litigation, accept appointment as counsel. None of the attorneys in that firm had any experience representing a capital defendant. Nonetheless, in January 1993, the court allowed current counsel to substitute CAP with the understanding that CAP would assist the firm on an ongoing basis. Id.

Newly-substituted counsel immediately began reviewing the extensive documents provided by CAP and met with petitioner several times. By the end of 1993, counsel had completed initial review of the documents, retained an investigator and sought a consultant for further aid. Their investigation was hindered by the fact that they were unable to interview petitioner's trial counsel, who had passed away in June 1992.

In August 1994, petitioner's counsel filed a request for funds to retain investigators and consultants. As part of their investigation, counsel requested that respondent stipulate to the issuance of subpoenas to obtain various records. Because respondent refused to stipulate, petitioner sought authorization to serve subpoenas from the court. Following briefing and a hearing, the court

6

issued an order in January 1995 permitting petitioner to serve subpoenas seeking a limited range of records from two law enforcement agencies. Id.

In the interim, CAP was defunded as a federal resource center. As a result, petitioner's counsel lost CAP's assistance.

At the time of the enactment of the AEDPA in April 1996, petitioner was continuing to investigate and prepare his federal claims. The AEDPA introduced, for the first time, a statute of limitations for federal habeas petitions. Petitioner promptly sought the court's guidance as to its effect on his case. Dkt. Nos. 85, 238. On March 24, 1997, the court ruled that the AEDPA's statute of limitations did not apply to petitioner's case. Dkt. No. 91.

Out of an abundance of caution, petitioner nonetheless filed on April 23, 1997, within the statutory period, a federal petition containing only exhausted claims, a notice of unexhausted claims and a motion to hold the petition in abeyance pending the completion of exhaustion proceedings in state court. This filing was in compliance with the court's scheduling order. Dkt. No. 93.

On October 6, 1997, in light of Calderon v. United States District Court (Kelly), 127 F.3d 782 (9th Cir. 1997), the court reversed itself and found that the AEDPA statute of limitations did apply to petitioner's case. Dkt. No. 127. The court directed petitioner to delete any claims it determined to be unexhausted and stayed the petition pending the completion of exhaustion proceedings. The court instructed petitioner to present unexhausted claims to the state court within 60 days of the date of the court's order identifying unexhausted claims.

Petitioner followed the court's instructions. The court identified unexhausted claims in June 1999. Dkt. No. 142. Petitioner withdrew them from his petition in July 1999. Dkt. 145. Following the court's grant of four extensions of time, petitioner filed a 500-page state exhaustion petition containing 69 claims on November 6, 2002. The Supreme Court of California denied it on October 29, 2003.

7

The court held a status conference on November 14, 2003, during which it ordered petitioner to file an amended petition containing his newly exhausted claims by December 19, 2003. He did so. Throughout his habeas proceedings, petitioner has complied with court orders, observed deadlines and moved forward with his case.

Respondent argues that petitioner was dilatory in the years prior to the commencement of the limitations period, in effect ever since his conviction became final on direct review. Seven years elapsed between the time that his conviction became final and the date his original petition was filed on April 23, 1997. During a portion of that time however, petitioner either lacked counsel because the state court did not provide him with counsel to pursue state habeas proceedings, or his federal representation was in flux as a result of numerous substitutions of counsel. Furthermore, the state's failure to provide petitioner with habeas counsel made the preparation of an exhaustion petition more time-consuming for federal counsel. As described above, federal counsel diligently pursued petitioner's claims despite numerous obstacles, and notwithstanding the fact that no statute of limitations existed prior to the passage of the AEDPA.

Respondent's contention that petitioner was dilatory in filing his state exhaustion petition once federal counsel were appointed is refuted by the court's finding of good cause for granting petitioner four extensions of time to prepare and file the petition. With each extension request, the court found that the need for additional time was warranted. See Dkt. Nos. 146, 147, 149 and 152.

### B. Extraordinary Circumstances

Extraordinary circumstances warrant an equitable tolling of the statute of limitation. As discussed below, the extraordinary circumstances that render the petition time-barred are changes in the law largely occasioned by the passage of the AEDPA. See Harris v. Carter, 515 F.3d 1051 (9th Cir. 2008) (petitioner entitled to equitable tolling where the Supreme Court's overruling of precedent he had relied upon made it impossible to file a timely petition), Townsend v. Knowles, 562 F.3d 1200 (9th Cir. 2009), abrogated on other grounds, Walker v. Martin, 131 S.Ct. 1120 (2011) (change

in law warrants equitable tolling); Ashmus v. Ayers, C93-594 TEH (N.D. Cal. Oct. 5, 2006); Jesus v. Miller, 215 F. Supp. 2d 410 (S.D.N.Y. 2002).

First, the Ninth Circuit's decisions in Greenawalt v. Stewart, 105 F.3d 1268 (9th Cir. 1997), and Calderon v. United States District Court (Gordon), 107 F.3d 756 (9th Cir. 1997), precluded petitioner from originally filing a mixed petition which ultimately would have preserved the timeliness of all of his claims. Greenawalt and Gordon interpreted Rose to require the total exhaustion of habeas claims filed in district court and the dismissal of "mixed petitions." Pursuant to these cases as well as the court's instructions, (Dkt. No. 93), petitioner's original petition, filed on September 23, 1997, contained only exhausted claims. In Rhines v. Weber, 544 U.S. 269, 275 (2005), however, the Supreme Court recognized that as a result of the interplay between the AEDPA's statute of limitations and Rose's dismissal requirement, "petitioners who came to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." The Court therefore afforded district courts discretion to grant stays of mixed petitions. Id. at 277. But for Greenawalt and Gordon, petitioner would have filed a mixed petition, as was indeed the practice in the Ninth Circuit prior to these decisions, see former Local Rule 296-8(e), and his claims would have been timely.

Second, after petitioner filed his petition in 1997, the Supreme Court's decision in Duncan v. Walker, 533 U.S. 167 (2001), changed the law relating to statutory tolling. The AEDPA's statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In Duncan, the Court held that the phrase "State post-conviction or other collateral review" does not include federal habeas petitions, and therefore the AEDPA's statute of limitations is not tolled by the filing of a federal habeas petition. 533 U.S. at 181-82. Until Duncan, petitioner had every reason to believe that the filing of his federal petition statutorily tolled the limitations period and obviated the need to file a state habeas petition in order to benefit from statutory tolling.

9

Third, as discussed above, the Supreme Court's decision in Mayle made relation-back much more difficult. Mayle provides that a petitioner may amend a new claim into a pending federal habeas petition after the expiration of the statute of limitations only if the new claim shares a "common core of operative facts" with the claims in the pending petition. 545 U.S. at 659. The scope of claims eligible for relation-back was further narrowed in King, 564 F.3d at 1142, in which the Ninth Circuit held that new claims may only relate back to claims that were "properly contained in the original petition - that is, those claims that were exhausted at the time of filing." To the extent that any of petitioner's claims do not relate back to claims in his original petition, their resulting untimeliness is a consequence of the new standard announced in Mayle.

Finally, tolling is warranted because in light of the gravity of capital punishment, a rigid application of the limitations period would be unfair. In considering a request for equitable tolling from a capital prisoner, the Third Circuit observed:

> If the limitations period is not tolled in this case, [petitioner] will be denied all federal review of his claims. Here the penalty is death, and courts must consider the ever-changing complexities of the relevant provisions [petitioner] attempted to navigate. Because the consequences are so grave and the applicable law is so confounding and unsettled, we must allow less than 'extraordinary circumstances' to trigger equitable tolling of the AEDPA's statute of limitations when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair.

Fahy v. Horn, 240 F.3d 239, 245 (3d Cir. 2001). As the Supreme Court has repeatedly observed, "death is different." See Caldwell v. Mississippi, 472 U.S. 320, 329 (1985).

In sum, equitable tolling is necessary to soften the harsh impact of rules that might otherwise prevent petitioner from obtaining federal review of his claims. Petitioner has diligently pursued his claims and has sought guidance from the court when unsure as to how he should proceed. He has always complied with court orders. He filed a habeas petition within the limitations period even though the court had ruled that the AEDPA's statute of limitations did not apply to his case. He also provided respondent, within the limitations period, notice of his unexhausted claims which under then-existing precedent, he was precluded from including in his petition. After the court determined

10

that the limitations period did apply, he relied on then-existing precedent and court rulings to delete unexhausted claims from his petition. His current predicament is the result of unforeseen changes in the law.

### IV. Conclusion

Equitable principles weigh in favor of tolling the statute of limitations. Because the court finds equitable tolling warranted, it need not address the parties arguments regarding statutory tolling, or determine whether petitioner's claims relate back to claims in the original petition. Additionally, respondent's request to vacate, nunc pro tunc, the court's 1997 order granting petitioner a stay is denied.

Respondent's motion is DENIED.

**IT IS SO ORDERED.**

DATED: 1/14/14

D. Lowell Jensen
United States District Judge

Copy of Order E-Filed on 1/15/14 to Counsel of Record:

Copy of Order Mailed on 1/15/14 to:

**California Appellate Project**
California Appellate Project
Federal Court Docketing
101 Second Street
Suite 600
San Francisco, CA 94105